[No. H008493. Sixth Dist. July 28, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES IRVING SHOALS, Defendant and Appellant.

[No. H009169. Sixth Dist. July 28, 1992.]

In re JAMES IRVING SHOALS on Habeas Corpus.

COUNSEL

Gregory Marshall, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Mark S. Howell and Matthew P. Boyle, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PREMO, J.—James Irving Shoals appeals from judgment after a jury convicted him of two narcotics offenses. He admitted three prior felony convictions and the court found a fourth true. The court imposed a 12-year state prison sentence. Appellant raises numerous points including prosecutorial misconduct, sufficiency of the evidence, sufficiency of the jury instructions, and erroneous denial of his *Marsden*[1] motion and new trial motions. We affirm in part and reverse in part.

Appellant also petitions this court for a writ of habeas corpus based on ineffective assistance of trial counsel for failing to move to suppress evidence seized in the search of the motel room, and for failing to proffer the codefendant's guilty plea at trial. We will discuss these contentions in connection with this appeal.

### 1. FACTS

Around 9 a.m. on September 27, 1990, four state parole officers went to the Executive Inn in San Jose to arrest appellant and search his room and a car he had been seen driving. When the parole agents arrived, there were two occupants in the room; appellant was in the shower and a woman named Jackie Levell opened the door.

The search of the room yielded 21 small baggies; 2 were tested and contained cocaine base. Two baggies were found on a nightstand near a man's watch, a ring, and a pager, and the rest were in the open drawer of the nightstand. There was $533.32 in cash hidden under the mattress and in a suitcase which also contained women's and children's clothes. With the exception of the clothes appellant put on when he got out of the shower, the only clothing in the room was women's and children's. However, men's

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

cologne was on the dresser in the bedroom and deodorant and razors were found in the bathroom.

Parole Officer Donald McLellan searched the wallet that was removed from appellant's pants and found a California driver's license in the name of Michael Dean Lampley. McLellan also learned that appellant had rented the room on September 5, 1990, using the name "Chooks." Either he or Levell paid the rent daily in cash; appellant paid two-thirds of the time. The motel manager reported that appellant responded when addressed as "Mr. Chooks." The 24-hour switchboard handled heavy telephone traffic to and from appellant's room day and night, with callers asking for "Chooks," for "the Black gentleman," for "room 219," and for Levell.

McLellan searched the trunk of a 1990 Chrysler parked nearby, which was one of the cars appellant had been seen driving. He found clothing (mostly women's and children's, but some men's), and about 25 papers in the trunk. The name Kenneth Nunn was on an application for cash aid, food stamps, and medical assistance, and the name Anita Nunn was on a magazine wrapper. The first name Edward was on another document.

The name Vonceil Belfield appeared on numerous papers, including a traffic citation issued on September 7, 1990, for being under the influence of cocaine. The citation described a four-door 1990 Chrysler with the license plate No. 2SPJ652 which matched the license plate and description of the Chrysler McLellan searched.

The Chrysler belonged to General Rent-a-Car, and was last rented on July 15, 1990, to a person named Lasou. General Rent-a-Car had no record of the car being missing between July and October, or that anyone using the names Shoals, Nunn, or Belfield rented the car or had access to the keys.

At trial, the parties stipulated that appellant knew the narcotic nature of cocaine, that the search was legal, and that the pager was owned by "another person," not appellant.

Of the six counts charged against appellant, he was found guilty of possession of cocaine base for sale (count 1, Health & Saf. Code, § 11351.5) and maintaining a place for selling or using a controlled substance (count 4, Health & Saf. Code, § 11366). The other counts were dismissed.[2] Appellant admitted two enhancements which authorized additional three-year consecutive terms for prior drug convictions. (Health & Saf. Code, § 11370.2, subd.

---

[2]Count 2, vehicle taking (Veh. Code, § 10851, subd. (a)), and count 3, possession of stolen property (Pen. Code, § 496) were dismissed after the jury returned a partial verdict on counts 1 and 4. Count 5, unauthorized possession of a hypodermic needle (Bus. & Prof. Code,

(c).) He also admitted a prior felony conviction for which he had served a prison term. (Pen. Code, § 667.5, subd. (b).) He agreed to a court trial on another charged prior, which was found to be true.

After his conviction, appellant filed a motion for a new trial. The court denied it and then imposed a four-year term on count 1, two years concurrent on count 4, three years consecutive for each of the two prior drug convictions, and one year consecutive for each of the two prior prison terms. This appeal ensued.

## 2. CONTENTIONS ON APPEAL

First, appellant contends that it was reversible error for the trial court to deny his motion for a new trial. He asserted that Levell's availability to testify constituted newly discovered evidence.

Second, appellant asserts that the evidence on count 4 was insufficient to prove that the motel room was "opened or maintained for the purpose of unlawfully selling, giving away, or using controlled substances," and that the court failed to define the "non-obvious terms of Health and Safety Code section 11366 [count 4, 'the "maintaining" offense']."

Appellant also challenges the court's refusal of the jury's request for the written version of the instruction on the elements of count 4, and the court's response to the jury's request without notifying defense counsel and giving her an opportunity to be heard.

Appellant asserts further instructional error in the court's failure to give sua sponte CALJIC No. 2.71 on admissions, which contains the warning that evidence of a defendant's oral admission should be viewed with caution.

Next, appellant claims that the prosecutor engaged in misconduct requiring reversal when he "repeatedly and relentless [sic] . . . made reference to the 'fact' that appellant was unemployed at the time he was arrested." Actually, as respondent admits, there was no evidence before the jury on appellant's employment status.

Appellant complains of further misconduct when the prosecutor argued to the jury, "You're going to say, well, wait a minute, someone else was in that room. Miss Levell. . . . The court has instructed . . . that you can't consider that." Appellant interprets this statement as an "assertion that the law

§ 4149), and count 6, possession of paraphernalia (Health & Saf. Code, § 11364), were dismissed on the second day of trial.

required the jury in effect to disregard the defense theory, . . . that the drugs were in the exclusive possession of Jackie Levell . . . ."

Next, appellant declares that reversal is required for the court's error in denying the *Marsden* motion he made on the second day of trial in which he claimed that defense counsel was unprepared and that she had counseled codefendant Jackie Levell to refuse to testify in his behalf.[3]

Next, appellant claims that, in regard to the contested prior conviction, the prosecution failed to prove that he committed an offense or was in prison custody during the five years between his completion of a prison term on August 20, 1985, and the commission of the offenses in this case in September 1990.

Finally, appellant contends that the cumulative effect of the "numerous errors" requires reversal.

### 3. MOTION FOR A NEW TRIAL

At trial, the defense planned to elicit from Jackie Levell testimony that the cocaine belonged to her and that she hid it from appellant when he visited her so that he would not know she had it. However, in a hearing outside the presence of the jury, Levell, with sentencing pending on the plea of guilty she had entered on the first day of trial, invoked her privilege against self-incrimination as to all questions. She did not appear in front of the jury.

The defense then proffered one complete letter and two fragments of letters in different handwriting which it claimed Levell sent to appellant. Defense counsel represented that Levell personally wrote one letter, but that she had vision problems and would often dictate her letters. The letters contained admissions that the motel room and the cocaine rocks were Levell's. However, defense counsel was unable to lay a foundation for the admission of any of the letters. Levell had invoked her privilege against self-incrimination, and no witness was available to authenticate the handwriting of the letter purportedly handwritten by Levell. (Appellant had not provided counsel with the letters until that morning.) Accordingly, the letters were not admitted into evidence. Appellant presented no further defense.

When appellant's motion for a new trial came to hearing on May 22, appellant produced a declaration under penalty of perjury from Levell which stated: (1) that she had invoked her Fifth Amendment right against self-incrimination on the advice of her attorney; (2) that she had since been

---

[3]On the first day of trial, Levell pled guilty to count 1, possession of cocaine base for sale. She was sentenced to five years in state prison.

sentenced and was serving her sentence; (3) that 60 days had elapsed since she was sentenced and that she was not appealing the matter; and (4) that she told a probation officer who interviewed her in connection with appellant's presentencing report that she and 2 others bought the crack cocaine for $200 for their personal use and not for sale, that appellant did not know about it, and that she had hidden it and appellant did not know it was in her room. She also stated that she would testify to these facts if appellant were granted a new trial.

Appellant intended to present Levell's live testimony at the hearing on the motion; however, Levell was not present in court at the morning session, and her attorney was not present in the afternoon. The court heard and denied the motion on the basis of Levell's declaration, which the court stated "does not support a granting of a motion for a new trial."[4]

Sentencing followed immediately. At the end of the hearing, the prosecutor stated: "[F]or the record, Your Honor, the court in this matter did deny the defense motion for a new trial, and I just want to make it clear for the record I believe that was based on People versus Corona, which is located at 238 Cal.App.2d 1914." The court responded: "It's based on a variety of reasons that I'm not going [*sic*] enumerate on the record."

"When a verdict has been rendered . . . against the defendant, the court may, upon his application, grant a new trial . . . . [¶] [] 8. When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given . . . ." (Pen. Code, § 1181.)

██ "A motion for new trial on the ground of newly discovered evidence is looked upon with disfavor. [Citation.] The granting or denial of

---

[4]Appellant also asserts that his right to due process of law, that is, "his right adequately to make a *proffer* of the evidence he sought to bring before the court[,]" requires remand for redecision after Levell's live testimony is heard. Penal Code section 1181, subdivision 8, requires a defendant making a motion for a new trial on the ground of newly discovered evidence to produce at the hearing the *affidavits* of the witnesses by whom such evidence is expected to be given. This provision has been held to prohibit the trial court from conducting an evidentiary hearing at which witnesses would be permitted to testify. (*People* v. *Pic'l* (1981) 114 Cal.App.3d 824, 878-879 [171 Cal.Rptr. 106], disapproved on other grounds in *People* v. *Kimble* (1988) 44 Cal.3d 480, 486, 498 [244 Cal.Rptr. 148, 749 P.2d 803].) However, the taking of testimony at motions for a new trial in criminal cases has occurred since *Pic'l.* (See *People* v. *Martinez* (1984) 36 Cal.3d 816, 823, fn. 4 [205 Cal.Rptr. 852, 685 P.2d 1203].) Both procedures exist to inform the trial court of the content of the newly discovered evidence for purposes of deciding the motion for a new trial. Both satisfy due process requirements.

such a motion is within the sound discretion of the trial court and, absent a clear showing of abuse of discretion, will not be reversed on appeal." (*People* v. *Hernandez* (1971) 19 Cal.App.3d 411, 416 [96 Cal.Rptr. 854].)

■ Appellant challenges the trial court's ruling, claiming that "the Levell testimony certainly was *newly discovered*. During the trial Levell refused to testify; in truth, this evidence *did not even 'exist' until after the trial was over.*" (Italics appellant's.) Appellant reasons that if "the defense knows at the time of trial what the witness *would* say, but it is faced with the problem that the witness *cannot* be called to testify[,] [w]hen the witness later becomes *available* to testify, his testimony must be regarded as 'newly discovered.'" (Italics appellant's.)

■ "The standard of review of an order denying a motion for a new trial based on newly discovered evidence was established by [the Supreme Court] in 1887: 'To entitle a party to a new trial on the ground of newly discovered evidence, it must appear,—"1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits." . . .' [Citations.]" (*People* v. *Martinez, supra*, 36 Cal.3d at p. 821.)

At the motion, in addition to Levell's declaration, defense counsel stated that Levell "was represented throughout and I never spoke to her directly about what her testimony would be, could not do so her attorney refused to let me do so at any time. . . . [¶] . . . We had the hearing . . . at trial to see if we could get her testimony in. She took the Fifth and I was precluded from getting her testimony in . . . [A]t that point until I saw the probation report [I wasn't] sure what her testimony would be."

Respondent "submit[s] the Levell declaration was not newly discovered evidence."[5] It cites *People* v. *Corona* (1965) 238 Cal.App.2d 914 [48 Cal.Rptr. 193], for the proposition that a declaration from a codefendant who

---

[5]Respondent cites several federal cases agreeing with the holding: "When a defendant who has chosen not to testify subsequently comes forward to offer testimony exculpating a codefendant, the evidence is not 'newly discovered.' [Citations.]" (*United States* v. *Diggs* (9th Cir. 1981) 649 F.2d 731, 740.) However, *Diggs* construed Federal Rule of Criminal Procedure 33, which sets forth a five-part test which differs somewhat from Penal Code section 1181, subdivision 8, requirements in that "newly discovered" is defined as "discovered after the trial . . . ." (*Id.* at p. 739.) "Newly-available, exculpatory testimony of a co-defendant is not considered newly discovered evidence sufficient to grant a Rule 33 motion unless it satisfies this same five-part test." (*U.S.* v. *DiBernardo* (11th Cir. 1989) 880 F.2d 1216, 1224.)

refused to testify at trial is not newly discovered evidence. In *Corona*, the codefendant was being tried side-by-side with Corona. Corona did not attempt to call him as a witness, and he did not request to testify. "Penal Code section 1323.5 (superceded by Evid. Code, § 930) provides in part: '. . . the person accused or charged [of a crime] shall, at his own request, but not otherwise, be deemed a competent witness.'" (*People v. Corona, supra*, 238 Cal.App.2d at p. 920.)

In this case, appellant did call Levell as a witness. She responded by exercising her privilege against self-incrimination. She was legally unavailable as a witness. (Evid. Code, § 240, subd. (a)(1).)

In a similar case where the Attorney General asserted that the evidence was not newly discovered because the defense knew of the likely content of the testimony of a witness whom neither the defense nor the prosecution could find before trial, and who was therefore unavailable as a witness (Evid. Code, § 240, subd. (a)(5)), the court stated: "Were the 'newly discovered' requirement interpreted literally and restrictively, this set of facts might pose some concern. But we read the Supreme Court's decision in *People v. Williams* (1962) 57 Cal.2d 263, 273-274 [18 Cal.Rptr. 729, 368 P.2d 353] to have rejected such a mechanistic interpretation in favor of a more realistic approach which ties the concept of 'newly discovered' evidence to the reasonableness of the defense conduct in failing to present the evidence at the first trial. In *Williams*, the court reversed an order denying a new trial even though the defendant knew of the 'new' witness and her potential testimony before the first trial. (*Id.*, at p. 272.) This approach was reinforced in *Martinez, supra*, 36 Cal.3d 816, in which the court held that the attorney's lack of diligence in discovering relevant evidence, as distinguished from the defendant's, will generally not support the denial of a motion for new trial. (*Id.*, at p. 825.) In the present case, the People do not contend that the failure to present [Levell's] testimony at the first trial was the product of defendant's lack of diligence. Accordingly, we conclude that [Levell's] testimony was 'newly discovered' evidence within the meaning[] of *Williams* . . . ." (*People v. Hayes* (1985) 172 Cal.App.3d 517, 523-524 [218 Cal.Rptr. 362], fn. omitted.)

Nevertheless, the trial court was correct in denying the motion. To support a motion for a new trial, the evidence must be "such as to render a different result probable on a retrial of the cause . . . ." (*People v. Martinez, supra*, 36 Cal.3d at p. 821, citation omitted.) Appellant believes that Levell's testimony would directly contradict "the prosecution's theory that the circumstances supported the conclusion appellant lived in the motel room and was dealing cocaine out of that motel room, and therefore was surely the

owner of the cocaine the police found." Appellant points out, "Numerous cases hold that a motion for a new trial should be granted when the newly discovered evidence contradicts the strongest evidence introduced against the defendant. [Citations.]" (*People* v. *Martinez, supra*, 36 Cal.3d at p. 823.)

Levell's affidavit does not "contradict the strongest evidence introduced against the defendant." Her promised testimony that appellant had no knowledge of the presence of the cocaine and that she hid it "created at most a conflict with the *prima facie* case made out by the prosecution . . . ." (*People* v. *Charley Quong* (1935) 5 Cal.App.2d 137, 139 [42 P.2d 386].)

Appellant was arrested in company with Levell in a motel room which he had rented under a false name. He had been seen coming and going from the room for almost a month, and had received numerous telephone calls addressed to the false name or to his description ("the Black gentleman"). At the time of his arrest, he was unclothed. The only men's clothing in the room was his. The watch and ring, his by reasonable inference, were on the nightstand near two bindles of cocaine. The rest were in an open drawer in the nightstand where "[y]ou couldn't miss seeing them."

While Levell's affidavit is not cumulative, since no witness testified to her claim of ownership of the property or that she had hidden it, the clear thrust of the defense presented was that appellant did not live in the room or have dominion and control over its contents.

Consideration of whether it is reasonably probable that Levell's testimony would have affected the outcome of the trial if it had been presented to the jury, "asks both the trial and appellate courts to determine whether the inability of the defendant to present the evidence in question prejudiced the outcome of the trial. In viewing such an issue, we justifiably accord considerable deference to the trial judge 'because of "his observation of the witnesses, [and] his superior opportunity to get 'the feel of the case.' " [Citation.]' [Citation.]" (*People* v. *Hayes, supra*, 172 Cal.App.3d at pp. 524-525.)

"It is not uncommon, after trial, for one not charged with a crime to attempt to absolve his fellow confederate who has been convicted. [Citation.] The trial court was not bound to accept the statement of [the witness] as true. [Citation.] It was entitled to regard it with distrust and disfavor. [Citations.]" (*People* v. *Gompertz* (1951) 103 Cal.App.2d 153, 163 [229 P.2d 105].)

"Each case must be determined by its circumstances, and the new trial granted or refused according to the view taken of the whole evidence, in

connection with the alleged newly discovered evidence . . . . Granting or refusing a new trial must necessarily rest largely in the discretion of the court in which the trial has been had, and we cannot say, from the record before us, that the court failed to exercise a fair and reasonable judgment in denying the motion." (*People* v. *Sullivan* (1906) 3 Cal.App. 502, 513-514 [86 P. 834].)

## 4. "Maintaining a Place"

### (a) *Sufficiency of the Instruction*

■ Appellant contends that the court erred in its instructions on count 4, opening or maintaining a place for unlawfully selling, giving away, or using any controlled substance (Health & Saf. Code, § 11366). He charges that the court failed to orally define "opening" or "maintaining," and then declined the jury's written request for "[e]lements of proof for Count No. 4."

The trial court instructed the jury: "The defendant is accused in count 4 of the information of having committed the crime of maintaining a place in violation of Health and Safety Code section 11366.

"Every person who opens or maintains a place for the purpose of unlawfully selling, giving away, and using a controlled substance, to wit: cocaine base, is guilty of maintaining a place in violation of Health and Safety Code section 11366."

After deliberations started, the jury wrote a note asking for the elements of count 4, remarking, "They are not in the instructions we received." Without consulting counsel as required by Penal Code section 1138, the court returned the note with the written answer: "All of the elements are included in the narrative portion of the instructions."[6]

■ "It is the trial court's duty to see that the jurors are adequately informed on the law governing all elements of the case to the extent necessary to enable them to perform their function. This duty is not always satisfied by a mere reading of wholly correct, requested instructions. [Citation.] A trial court has a sua sponte duty (1) to instruct on general principles of law relevant to issues raised by the evidence [citation]; and (2) to give explanatory instructions when terms used in an instruction have a technical meaning peculiar to the law [citation]. A defendant has a constitutional right to have the jury determine every material issue presented by the evidence,

---

[6]The jury may take with them to the jury room the written instructions. (Pen. Code, § 1137.)

and a denial of that right constitutes a miscarriage of justice regardless of the strength of the prosecution's case. [Citation.]" (*People* v. *Reynolds* (1988) 205 Cal.App.3d 776, 779; Pen. Code, § 1138 [252 Cal.Rptr. 637].)

In the instant case, the court instructed the jury by reading the statute. However, that language does not make clear that in applying the law to the facts, the jury must determine the existence of "[t]he proscribed 'purpose' [which] is one that contemplates a continuity of such unlawful usage; a single or isolated instance of the forbidden conduct does not suffice. . . . [T]he requirement of a purpose for such sequential use is not limited to maintenance; it embraces both opening and maintenance. To 'open' the place for a single sale or use is no more covered by the statute than to maintain it for such singular purpose; the Legislature set up no such artificial distinction. It obviously condemned either opening or maintaining for the purpose of repetitious or successive unlawful conduct." (*People* v. *Horn* (1960) 187 Cal.App.2d 68, 72 [9 Cal.Rptr. 578].)

▆▆▆ Respondent is correct that when a court has generally instructed the jury on a point, defendant must make a request for a more specific instruction or be deemed to have waived the point on appeal. (*People* v. *Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366].) ▆▆▆ However, in this case, the language of the statute did not fully apprise the jury of the technical definition of an element of the crime.

Cases construing the terms "maintaining" or "opening" in reference to narcotics cases rely on earlier opinions which construed those terms in statutes proscribing maintaining alcohol-related nuisances during Prohibition. These were places whose proprietors meant them to be used for consumption or sale of alcohol. Similarly, the courts have held that Health and Safety Code section 11366 and its predecessor, section 11557, are aimed at places intended for a continuing course of use or distribution.

This concept must be made clear to the fact finder. Therefore, we agree with appellant that defining "maintaining" and "opening" is necessary because the statute employs a technical, legal meaning of these terms which is not likely to be commonly understood. (See *People* v. *Anderson*, *supra*, 64 Cal.2d at p. 639.)

▆▆▆ Since defendant's due process rights include the right to have the jury determine every element of the offense (*People* v. *Reynolds*, *supra*, 205 Cal.App.3d at p. 779), and since "[i]t is the trial court's duty to see that the jurors are adequately informed on the law governing all elements of the case to the extent necessary to enable them to perform their function" (*ibid.*),

appellant's failure to request the instruction does not waive the issue. A denial of the right to have the jury determine every material issue "constitutes a miscarriage of justice regardless of the strength of the prosecution's case. [Citation.]" (*Ibid.*) ■■ The jury was not instructed fully on the meaning of the elements of the offense in this case. Therefore, count 4 must be reversed.

### (b)  SUFFICIENCY OF THE EVIDENCE

Notwithstanding this conclusion, we must examine appellant's challenge to the sufficiency of the evidence of count 4. Relying on the cases cited above which require proof of continuity of unlawful usage, he contends that "[s]ince there was evidence of only a single occasion on which contraband was possessed in the motel room, the evidence was manifestly insufficient to sustain the conviction on count 4.

"Additionally, . . . the prosecution failed to prove it was the motel room—the 'place' this charge was tied to—that was to be the location of sales, gifts, or usage. [¶] For both of these reasons," he concludes, "the conviction on count 4 must be reversed."

Respondent cites *People* v. *Mehra* (1925) 73 Cal.App. 162, 170-171 [238 P. 802], for the proposition that maintaining a common nuisance may be shown first by possession and a series of sales; or by possession and a single sale accompanied by circumstances which raise the inference of the purpose for which the possession is had; or, finally, by "possession, *in connection with surrounding circumstances, such as the large quantity of liquor on hand*, the various kinds of liquor, the containers in which it is kept, the character of the place, the manner in which it is fitted up, the use of passwords in gaining access to the premises, evidence of people visiting the place in unusual numbers or at unusual times, all of which may reasonably raise the inference of a purpose to sell and sufficiently support the charge of maintaining a common nuisance." (Italics respondent's.)

■■ Perhaps by emphasizing one of the listed factors respondent is suggesting that possession of a large quantity of narcotics is sufficient to establish the crime of "maintaining a place." If so, we disagree.

The prosecution must prove that appellant opened or maintained room 219 for the purpose of selling the cocaine base. "Even where the statute provides that the unlawful possession of intoxicating liquor is *prima facie* evidence that such intoxicating liquor is possessed for the purpose of unlawful sale or disposition [which the court stated earlier in its opinion that the California

statute does not], the presumption does not arise that the place or establishment where the liquor is kept, is conducted as a common nuisance, or is maintained as a place for the unlawful sale of intoxicating liquor." (*People* v. *Mehra, supra,* 73 Cal.App. at p. 171.)

Health and Safety Code section 11366 does not declare that a presumption arises that the possession of a controlled substance is prima facie evidence that it is possessed for the purpose of unlawful sale, gift, or use. Neither does the presumption arise that the place where the controlled substance is kept was opened or maintained as a place for its unlawful sale, use, or gift.

Therefore, we must look to the factors besides "large quantity" which the *Mehra* court stated bore on defendant's purpose for opening or maintaining the room. The evidence in the instant case showed: (1) the character of the place was that of a home for a woman, possibly a man, and children; (2) the room was fitted up as a bedroom; (3) there was no evidence of people visiting the place in unusual numbers or at unusual times; or (4) no evidence of people under the influence on or around the premises; (5) there was no evidence of lookouts or of the use of passwords or codes to gain access; and, (6) there was no drug paraphernalia or drug residue in the room.

Although there was expert testimony that "the sheer number" of bindles indicates possession for sale, a large number of bindles, unlike a large quantity of alcohol, is extremely portable. The comings and goings of appellant but not of customers support the inference that any selling to, giving away to, or using by others besides appellant and Levell took place elsewhere.

In *Mehra* the court stated: "there is no testimony whatever of maintaining room No. 3 . . . for any purpose. The testimony simply shows the finding of a jug of whisky or jackass brandy in the bedroom unlocked by the defendant. If it were there for his own use, even though unlawfully obtained, it is evident that nothing within the language of a common nuisance was being maintained. Private possession in a private place may constitute the crime of unlawful possession, but that act, in and of itself, does not constitute any other criminal offense, under . . . the Volstead Law. . . ." (*People* v. *Mehra, supra,* 73 Cal.App. at p. 171.)

The *Mehra* court rejected upholding the conviction upon a lesser degree of evidence. "Any other holding would lead to the conclusion that wherever a bottle of liquor may be unlawfully in anyone's home, a conviction for maintaining a common nuisance may be had. [Citations.]" (*People* v. *Mehra, supra,* 73 Cal.App. at p. 171.)

In *People* v. *Horn, supra,* 187 Cal.App.2d 68, a case with much stronger indicia that the premises were maintained for the purpose of unlawful sale or use, the court found the required continuity of use was not established. In that case, five of the occupants of appellant's apartment were found with old and new needle marks on their arms while under the influence of narcotics; a couple of the occupants, including one woman who lived there permanently, were established to be narcotic addicts but there was no showing that they were currently addicts; the stoveless kitchen was shabby and the bedroom was dirty and neglected; the only narcotic found on the premises was a slight residue in one spoon; there were several articles for injecting narcotics on the premises but no showing they had been used more than once; the officers attempted to gain entry through a ruse, but failed, and had to force their way in; and although an occupant of the room was asking for "the next fix" as the officers approached the door, the court declared the statement indicated no more than that on one occasion occupants used narcotics within the apartment. (*Id.* at p. 74.)

Respondent cites *People* v. *Roeschlaub* (1971) 21 Cal.App.3d 874, 878 [98 Cal.Rptr. 888], for a case where "additional 'circumstances surrounding' the proscribed conduct may be sufficient to establish the offense. [Citation.]" However, that case shows a "single instance" of sales as well as "additional 'circumstances surrounding.' " (*Ibid.*) "Negotiations that took place between Deputy Alexander and defendant at defendant's home in the presence of the codefendants on August 4 constitute the single instance. In addition, the surrounding circumstances—the necessity for Alexander to go to defendant's home to close the deal (the amount of LSD offered for sale at $18,000 is hardly an amount that would be sold on the street or in a public place), defendant's conversation with Alexander in the former's home and in the presence of the codefendants who obviously conducted the preliminary negotiations for defendant, defendant's searching questions of Alexander, the fact that defendant's 'connection' called by him immediately came to defendant's home to see Alexander, defendant's disclosure to Alexander that the difference between the $14,400 mentioned by his 'connection' and the $18,000 Hirsch quoted him 'was for overhead and expenses,' arrangements with Alexander in defendant's presence that he was to call defendant at his home later to set up the final sale and the final communication by Alexander with defendant at his home by telephone the next day in which defendant told him the deal was off—compel the conclusion that defendant was in fact 'maintaining' the premises for the purpose of selling LSD." (*Ibid.*)

In the instant case, we find the evidence insufficient to support the verdict on count 4, and reverse. ■ The double jeopardy clause precludes a second trial when a reviewing court has reversed on the basis of insufficiency of the evidence. (*Veitch* v. *Superior Court* (1979) 89 Cal.App.3d 722, 725, 728-729 [152 Cal.Rptr. 822].)

## 5. PROSECUTORIAL MISCONDUCT

### (a) *References to Unemployment*

■ Next appellant asserts that it was prosecutorial misconduct requiring reversal for the prosecutor to argue appellant's unemployed status when there was no evidence of this fact in the record. Appellant is correct that this was misconduct (*People* v. *Johnson* (1981) 121 Cal.App.3d 94, 102 [175 Cal.Rptr. 8]) which is not absolved as respondent implies because the prosecutor "inadvertent[ly]" "simply forgot to ask the question as to appellant's unemployment" at trial.

Nevertheless, appellant's failure to object and seek a judicial admonition waives any error unless an admonition would not cure the damage. (*People* v. *Price* (1991) 1 Cal.4th 324, 440 [3 Cal.Rptr.2d 106, 821 P.2d 610].) In the instant case, appellant's reaction in the trial court was limited to contradicting the prosecutor's claim in his final argument.

Now he asserts that no admonition could have cured the harm. We disagree. Whether or not appellant was employed was a minor point when viewed against the backdrop of the substantial evidence of possession. We are "satisfied beyond a reasonable doubt that the misconduct did not affect the verdict." (*People* v. *Harris* (1989) 47 Cal.3d 1047, 1083 [255 Cal.Rptr. 352, 767 P.2d 619].)

### (b) *Urging the Jury to Disregard the Defense*

■ Next, appellant complains of the prosecutor's statement in closing argument that "[t]he court has instructed . . . that you can't consider that [someone else was in that room]." Appellant claims that "[t]he prosecutor contended that in a prosecution for possession of drugs found by police in a drawer in a motel room, where the circumstantial evidence suggested only a woman and children lived there, the issue of whether a certain woman occupied the motel room was *immaterial*, or legally unavailable to be considered, in the prosecution of a *man* who was taking a shower there when the police conducted their surprise raid. This is an absurd notion, one that no prosecutor could advance in good faith."

Respondent points out first that appellant failed to object, and second that "the prosecutor's argument, taken as a whole, was not misconduct."

The prosecutor stated: "There's another thing about Mr. Shoals that we know. He's a liar. Man lies about his name, goes by the name of Chooks,

Shoals and what else, Lampley. Take a look at this driver's license . . . . It looks very similar to Mr. Shoals. Why does a person need all this? Why does a person need to use fake names? Why does a person have to get all these phone calls in the middle of the night? Why does a person have to have a pager? Why does a person have no visible means of support? Why, he's dealing drugs.

"You're going to say, well, wait a minute, someone else was in that room. Miss Levell. Yeah, there was. The court has instructed on, to you, that you can't consider that. What she did is something else. We're here to discuss what the defendant knew, what he did, not what Miss Levell did. The law says two or more people may possess the same substance. It's called joint possession. In this case, there may have been joint possession between Miss Levell and Mr. Shoals, but the prosecution maintains that Mr. Shoals is the one who was at least the possessor or one of the possessors of this . . . crack cocaine."

"[A] conviction [for unlawful possession of narcotics] will be sustained if the accused had the immediate right to exercise dominion and control over the known narcotic even though his possession is constructive [citation] or joint with that of another person. [Citations.]" (*People* v. *Sotelo* (1971) 18 Cal.App.3d 9, 20 [95 Cal.Rptr. 486].)

Since Levell was not on trial, the court correctly instructed the jury not to consider why a person other than defendant who may have been involved in the crime was not being prosecuted in appellant's trial. (CALJIC No. 2.11.5.)

It is clear from the context that the prosecutor's remarks were directed to these proper subjects for comment. There was no misstatement of law and no misconduct.

### 6. THE MARSDEN DENIAL

Next, appellant claims the court erred in denying his motion to dismiss counsel on the second day of trial, the first day of jury selection. Appellant complained that "defense counsel had put too little effort into preparing the case, having not visited him even once to discuss the case, and had advised the co-defendant Jackie Levell not to testify on appellant's behalf." Counsel denied the latter allegation, and asserted that although she had not visited appellant in the jail, they had communicated on numerous occasions "face to face for prolonged periods of time, both in the court house and telephonically."

The court denied the motion and then mentioned that defense counsel "indicated to me that she talked to your witnesses and they said they'd be

glad to come in. And then just recently they have indicated that they're only coming in with a subpoena. And that's one of the reasons that we discussed on Friday that perhaps we shouldn't pick a jury on Friday, but perhaps on Monday so she could work on getting the subpoenas out to them." The court offered to order any witnesses who were in custody to be brought to court.

Defense counsel then moved to be relieved as appellant's attorney of record because "his confidence in me has eroded to such a point that he doesn't feel he's able to fully cooperate with me. Because of that, I can't fully prepare his defense and go forward with it. And in that case, he would be denied effective assistance of counsel . . . ."

The court responded: "that motion for you to withdraw is likewise denied." Defense counsel then stated that her process server had "run into difficulty" at the addresses she had for the witnesses, but would continue to attempt service. She then requested the court "to direct Mr. Shoals to provide me with any other information as to the whereabouts of these individuals if he has such information." The court declined, saying: "That's between the two of you. . . . I'm not going to tell a defendant to do or not do something. Obviously, it's going to help you get witnesses on his behalf if your process server knows how he can serve them."

Appellant then complained of counsel's efforts two months earlier to "persuade me to take [a plea bargain]. . . . [S]he seems to just be persistent about me taking some time." He reasserted that he was not comfortable with her as his attorney, and that she was not diligent in preparing the case. He requested new counsel. The court repeated that the *Marsden* motion was denied.

Our Supreme Court has "consistently held that the 'decision to allow a substitution of attorney is within the discretion of the trial judge "unless there is sufficient showing that the defendant's right to the assistance of counsel would be substantially impaired if his present request was denied . . . ." ' [Citation.] In *Marsden, supra,* 2 Cal.3d at pages 124-125, we held that in ruling on a motion for substitution of counsel, the court must allow defendant an opportunity to enumerate specific examples of inadequate representation. We determined in *Marsden* that the trial court there had abused its discretion by refusing to listen to the reasons for which defendant had requested substitution of counsel." (*People v. Moore* (1988) 47 Cal.3d 63, 76 [252 Cal.Rptr. 494, 762 P.2d 1218].)

The trial court here did not abuse its discretion. First, defense counsel has a duty "to investigate and pursue possible dispositions by way of

plea." (*People* v. *Brown* (1986) 177 Cal.App.3d 537, 549 [223 Cal.Rptr. 66].) Therefore, presenting, and even urging, acceptance of the prosecution's settlement offer is an insufficient basis for substitution of counsel. Next, a defendant's complaint that counsel did not consult often enough (*People* v. *Hisquierdo* (1975) 45 Cal.App.3d 397, 403 [119 Cal.Rptr. 378]), a failure to cooperate (*People* v. *Lindsey* (1978) 84 Cal.App.3d 851, 857-860 [149 Cal.Rptr. 47, 2 A.L.R.4th 485]), and tactical differences (*People* v. *Douglas* (1990) 50 Cal.3d 468, 520-521 [268 Cal.Rptr. 126, 788 P.2d 640]), do not require substitution of counsel unless the disagreement "signal[s] a breakdown in the attorney-client relationship of such magnitude as to jeopardize defendant's right to effective assistance of counsel" (*People* v. *Robles* (1970) 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710]). Appellant's and counsel's mutual complaints did not establish such a breakdown.

Additionally, the motion made during trial was untimely. (*People* v. *Molina* (1977) 74 Cal.App.3d 544, 547-548 [141 Cal.Rptr. 533].) The court had to weigh appellant's request against the state's interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of assembling the witnesses, lawyers, and jurors. (*People* v. *Ortiz* (1990) 51 Cal.3d 975, 983-984 [275 Cal.Rptr. 191, 800 P.2d 547].) There was no error.

### 7.  INSTRUCTIONAL ERROR: ADMISSIONS

Appellant contends that because the motel manager testified that appellant telephoned him on the afternoon of the arrest and "was saying something about that he was renting the room for the lady or something like that," the court should have instructed the jury in the language of CALJIC No. 2.71 that it should view with caution evidence of admissions of defendant.[7]

Respondent counters that appellant's statement was an exculpatory statement, and therefore CALJIC No. 2.71 was inappropriate.

"CALJIC No. 2.71 tells the jury an admission is a statement that tends to prove guilt. It then instructs the jury to determine whether defendant made

---

[7]CALJIC No. 2.71 provides: "An admission is a statement made by [the] defendant other than at [his] trial which does not by itself acknowledge [his] guilt of the crime(s) for which such defendant is on trial, but which statement tends to prove [his] guilt when considered with the rest of the evidence.

"You are the exclusive judges as to whether the defendant made an admission, and if so, whether such statement is true in whole or in part. If you should find that the defendant did not make the statement, you must reject it. If you find that it is true in whole or in part, you may consider the part which you find to be true.

"[Evidence of an oral admission of [the] defendant should be viewed with caution.]"

an admission, i.e., whether the defendant made the statement *and* whether the statement tends to prove guilt when considered with the rest of the evidence. In light of the definition of 'admission,' if the jury determines a statement does not tend to prove guilt when considered with the other evidence, it is not an admission. The cautionary language instructs the jury to view evidence of an *admission* with caution. By its terms, the language applies only to statements which tend to prove guilt and not to statements which do not." (*People* v. *Vega* (1990) 220 Cal.App.3d 310, 317 [269 Cal.Rptr. 413].)

The court continued, "We recognize it is not uncommon that a single statement may tend to prove guilt or innocence, depending upon the state of the remaining evidence and the issue for which it is being considered. Many times extrajudicial statements of defendants . . . have the purpose of asserting innocence. Although a statement *when made* may not be incriminating, when considered with the rest of the evidence at trial it may nevertheless be viewed as an admission. For example, a defendant's statement denying participating in a crime may create an inference of incredibility or consciousness of guilt when considered along with other evidence connecting the defendant with the crime. That same statement may be purely exculpatory when considered in the absence of that other evidence. [Citation.] Similarly, a statement by a defendant purportedly giving an innocent explanation of the circumstances may be so implausible that it is incredible, thereby tending to prove guilt. Yet the implausible explanation may still be relied upon as a defense." (*People* v. *Vega*, *supra*, 220 Cal.App.3d at pp. 317-318.)

In the instant case, the prosecutor requested the jury to infer guilt. "Why did Mr. Shoals make that call? Well, Mr. Shoals knew he was in deep trouble, that's why he made that call. He made that call because he knew drugs were found in that room. He was in that room, he was going to get caught. And the only way was he could make that phone call and say, hey, it wasn't me there. I wasn't renting that room. [¶] . . . Mr. Shoals is kind of a smart guy in some ways. . . . [H]e's having another woman stay in that room as a front. Mr. Shoals is using that woman as a front, as a narcotic's [*sic*] dealer, finally staying there occasionally by paying rent."

A court has a sua sponte duty to give CALJIC No. 2.71 where a defendant's admission is used to prove a part of the prosecution's case. (*People* v. *Bunyard* (1988) 45 Cal.3d 1189, 1224 [249 Cal.Rptr. 71, 756 P.2d 795].) "The error, however, was not prejudicial. As we explained in [*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]], 'The omission . . . does not constitute reversible error if upon a reweighing of the evidence

it does not appear reasonably probable that a result more favorable to defendant would have been reached in the absence of the error.' (6 Cal.3d at p. 455.) . . . [T]here was no issue of conflicting evidence in this case concerning the precise words used, their meaning or context, or whether the oral admissions were remembered and repeated accurately. [Citation.]" (*Ibid.*)

Therefore, we find that appellant was not prejudiced by the failure to give CALJIC No. 2.71 in this case. The content of the statement was consistent with appellant's defense. Appellant did not challenge the fact of the statement or its accuracy. The jury was instructed with CALJIC No. 2.20, credibility of witness, CALJIC No. 2.21.1, discrepancies in testimony, CALJIC No. 2.21.2, witness wilfully false, CALJIC No. 2.22, weighing conflicting testimony, and CALJIC No. 2.27, sufficiency of testimony of one witness. These instructions adequately informed the jury of its duty to determine the believability of the witness and of each part of his testimony and the weight to which the testimony was entitled. We believe that a more favorable result was not reasonably probable absent the error. (*People* v. *Bunyard*, *supra*, 45 Cal.3d at p. 1225.)

### 8. PROOF OF THE PRIOR CONVICTION

Appellant next contends that the prosecution failed to prove the prior conviction which he contested. He claims that Penal Code section 667.5, subdivision (b), requires the prosecution to prove that he did not remain free for five years from both prison custody and the commission of an offense which resulted in a felony conviction.

Of the 19 allegations of prior felony convictions unhelpfully charged in the information without reference to dates or court numbers, 2 prior prison convictions were alleged pursuant to Penal Code section 667.5, subdivision (b). Appellant admitted one, a 1981 second degree burglary. He did not admit the other, a 1984 second degree burglary.

In a bifurcated court trial on the second prison prior which took place three months after the trial, the prosecution presented evidence consisting of a "prison packet" and an exhibit which contained the booking sheet for the instant case showing the arrest on September 27, 1990, and four others showing arrests in 1981, 1983, and twice in 1987. There was no evidence of the dispositions of those arrests.

Subdivision (d) of Penal Code section 667.5 provides: "For the purposes of this section, the defendant shall be deemed to remain in prison custody for

an offense until the official discharge from custody or until release on parole whichever first occurs including any time during which the defendant . . . is reimprisoned on revocation of parole. . . ."

The prison packet contained abstracts of judgment on the cases for which appellant was incarcerated and the Department of Corrections record of the dates and places of appellant's imprisonment. That record shows that appellant was admitted on September 17, 1981, to serve sentences on four cases. He was returned to prison from parole for a new offense on February 18, 1984. He was paroled on October 12, 1984, and was discharged from parole on August 20, 1985. The exhibit shows no subsequent return to prison.

Respondent claims that the court had other evidence available to it, namely appellant's "rap sheet" and two prior felony drug convictions.

Appellant had stipulated that the court could consider his rap sheet on the first day of trial during a motion *in limine* to determine which prior felony convictions could be used to impeach. The rap sheet was not admitted into evidence. Appellant had admitted two prior felony drug convictions (Health & Saf. Code, §§ 11351, 11352)[8] charged pursuant to Health and Safety Code section 11370.2, that same day.

In his reply brief, appellant objects that he did not stipulate that the rap sheet could be utilized as a substitute for proof in the bifurcated trial on the priors. This is an affray we need not enter. ■ Even with the rap sheet, proof of felony convictions *and* prison custody during the five-year washout period after appellant's discharge from parole is not established.

The booking sheets merely show arrests, not dispositions. The rap sheet attached to the probation report shows no prison commitments after 1984, which penalty was for the prior conviction which was the subject of the court trial. The rap sheet also shows one entry each for Health and Safety Code sections 11351 and 11352, that appellant pled guilty to them and two other counts on December 31, 1987, and that he was placed in the California Rehabilitation Center on an involuntary civil commitment. (Welf. & Inst. Code, § 3051; *People* v. *Peoro* (1976) 56 Cal.App.3d 35, 39 [128 Cal.Rptr. 130].)

---

[8]The information charged appellant with a prior conviction of transportation of a controlled substance. (Health & Saf. Code, § 11352.) When the court took appellant's admission of that prior, the court informed appellant: "[O]n the next one you're faced with a violation of Health and Safety Code section 11350, also within the meaning of 11370.2, again an enhancement, and the underlying charge in this case was transportation of a controlled substance." Appellant does not complain of the variance between the section number stated by the court and the correct section number of the charge which he admitted.

A period of commitment at CRC is not "confinement imposed '*as punishment* for commission of an offense[]'" (*People* v. *Lara* (1979) 95 Cal.App.3d 247, 250 [158 Cal.Rptr. 847], fn. omitted), and does not subject appellant to having his present sentence enhanced under the provisions of Penal Code section 667.5 (95 Cal.App.3d at p. 249).

Since the prosecution failed to prove that appellant served a term of prison custody between his discharge from parole in 1985 and the instant offense in 1990, the one-year prior prison enhancement cannot stand.

## 9. PETITION FOR A WRIT OF HABEAS CORPUS

■■ In his petition for a writ of habeas corpus, appellant asserts that counsel rendered ineffective assistance in two areas: she failed to proffer into evidence codefendant's guilty plea, and she failed to move to suppress evidence seized in the search of the motel room. (Pen. Code, § 1538.5.) Appellate counsel requested but did not receive a response from trial counsel on these points.

■■ To establish incompetence, petitioner must show that counsel's performance was deficient. Counsel is deficient if he or she fails to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. Petitioner must also show that it is reasonably probable that a determination more favorable to defendant would have resulted in the absence of counsel's failings. (*People* v. *Ledesma* (1987) 43 Cal.3d 171, 215-218 [233 Cal.Rptr. 404, 729 P.2d 839].)

Generally, a reviewing court must affirm the judgment unless petitioner demonstrates that the record affirmatively discloses that counsel's acts or omissions cannot be explained on the basis of any knowledgeable choice of tactics. (*People* v. *Bunyard*, *supra*, 45 Cal.3d at p. 1215.)

This court is deprived of trial counsel's personal explanation of the reasons for her actions. However, appellate counsel attached a declaration to the petition in which he represents that in a telephoned response to his inquiry, trial counsel said "that she had not challenged the legality of the search because she believed there was abundant legal cause for it, and she had not sought to introduce evidence of Levell's guilty plea because she thought it would lead the jury to dislike Mr. Shoals for his having sought to pin the blame on his girlfriend."

■■ In making a claim for relief on habeas corpus, the petition must specify the facts on which appellant bases his claim that he is unlawfully

restrained. (Pen. Code, § 1474.) "If, taking the facts alleged as true, the petitioner has established a prima facie case for relief on habeas corpus, then an order to show cause should issue." (*In re Lawler* (1979) 23 Cal.3d 190, 194 [151 Cal.Rptr. 833, 588 P.2d 1257].)

As to the failure to proffer Levell's guilty plea, petitioner has not shown that this was a deficient performance which was not an informed tactical choice and that it deprived him of a fair trial. (See *Strickland* v. *Washington* (1984) 466 U.S. 668, 688 [80 L.Ed.2d 674, 693, 104 S.Ct. 2052].) Petitioner presents us with no facts to show that the outcome of the trial would have been more favorable if the jury had known of Levell's guilty plea. As previously stated, "a conviction [for unlawful possession of narcotics] will be sustained . . . even though his possession is constructive [citation] or joint with that of another person. [Citations.]" (*People* v. *Sotelo*, *supra*, 18 Cal.App.3d at p. 20.)

Additionally, the record is silent on McLellan's knowledge and activity before the search, and petitioner presents no facts to indicate that Parole Officer McLellan did not have probable cause to search the apartment. Appellant "is [not] entitled to relief merely because counsel's inaction deprived him of the *opportunity* to challenge the legality of the [search]. 'Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excluded evidence in order to demonstrate actual prejudice.' [Citation.] A contrary rule would be inconsistent with our pronouncements in numerous cases requiring a defendant claiming ineffective assistance of counsel to show prejudice resulting from counsel's acts or omissions. [Citations.]" (*People* v. *Wharton* (1991) 53 Cal.3d 522, 576 [280 Cal.Rptr. 631, 809 P.2d 290], fn. omitted.)

We conclude that appellant fails to present a prima facie case requiring this court to issue an order to show cause.

### 10.  DISPOSITION

The petition for a writ of habeas corpus is denied. The judgment as to count 4, a violation of Health and Safety Code section 11366,[9] is reversed.

---

[9]The Health and Safety Code section number which appears on the abstract of judgment, 11364, is incorrect.

The finding that appellant suffered a prior prison term pursuant to Penal Code section 667.5, subdivision (b), for the 1984 burglary, is stricken for insufficiency of the evidence. In all other respects, the judgment is affirmed. The clerk of the superior court is ordered to modify the abstract of judgment in accordance with this opinion and to transmit a corrected copy to the Department of Corrections.

Capaccioli, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied August 26, 1992, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 10, 1992.