[Crim. No. 14139.   Second Dist., Div. One.   July 10, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES WENDEL WASHINGTON, Defendant and Appellant.

Morton Herbert, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bruce M. Perlman, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of burglary.

In an amended information filed in Los Angeles on March 29, 1967, defendant with Alvin Nairn, Ezel Wilson, Jr., and George Wilson were charged in count I with burglarizing the building occupied by National Outfitting Company and Leo Birnstein on April 13, 1966; in count II George Wilson was charged with receiving stolen property. It was further charged that defendant Washington previously had been convicted of forgery in Los Angeles County in March 1965. Washington pleaded not guilty and denied the charge of the prior conviction. A jury trial was waived as to the issue of the

charged prior conviction. In a jury trial on the merits Washington was found guilty as charged in the information. No finding was made as to the prior conviction. The burglary was found to be in the second degree. A motion for a new trial was denied as was probation. Washington was sentenced to the state prison. A timely notice of appeal from the judgment was filed.

A résumé of some of the facts is as follows: Paul Herne the owner and Leo Birnstein the manager of National Outfitting Company of 5225 South Broadway, Los Angeles, left the store at about 6:05 p.m. on April 12, 1966. The merchandise was present and ready for sale at that time. Birnstein unsuccessfully attempted to set a burglar alarm at the time of leaving. No one had permission to enter the store upon or after their leaving.

At a time before the store was closed on April 12, 1966, Washington with three others had entered the store. Jones, one of the group at that time, made out an application for credit for the purchase of a television set.

Walter Bailey, a resident of 5217½ South Broadway, was awakened by a noise outside his house at about 5:30 a.m. April 13, 1966. Bailey looked out of his bedroom window at the National Outfitting Company's loading dock. Bailey first saw a car and after watching it for a few minutes decided to call and did call the police. While he was talking to the police the car drove away. In about five minutes a stake truck drove up and parked with the front thereof under his window and the rear thereof facing the loading dock. Bailey called the police again. Bailey saw Washington and others around the truck. Bailey, after watching the truck for a few minutes, proceeded to the vicinity of the truck in order to secure the license plate number. Bailey saw Washington bringing television sets out from the back of the store and taking them to the truck where they were being loaded into the truck.

At about 6 a.m. Officers Board and Yanez arrived at the store and questioned Bailey. Officer Board made out a report. At about 5:50 a.m. (April 13) Birnstein returned to the store, found the rear door open and some merchandise missing. Herne, the owner, appeared about 9 a.m. (April 13) and caused an inventory to be taken. Certain merchandise was missing, part of which was recovered later at the police station.

Officer Eide went to the home of the mother of Washington and left word that he (the officer) wanted to talk with Washington. On April 18, 1966, Washington appeared at the police

station but refused to talk with Officer Eide. In September 1966 Washington contacted Officer Eide and after being advised of his constitutional rights, freely and voluntarily told Officer Eide that he would tell him where the rest of the television sets were in exchange for a deal which he proposed. Washington indicated that the merchandise would be moved if there was any delay.

▇▇▇ Appellant now asserts that the prosecutor was guilty of misconduct in his cross-examination[1] of one Jones, who was a witness for Washington.

Section 2048 of the Code of Civil Procedure then in force provided:

"The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith, and in so doing may put leading questions, but if he examined him as to other matters, such examination is to be subject to the same rules as a direct examination."

It is appropriately stated in *People* v. *Perez,* 253 Cal.App. 2d 288, 297 [61 Cal.Rptr. 582]:

"Experience shows that cross-examination is one of the most effective aids to an ascertainment of truth. While it is improper to ask questions which find no support in the actual facts, or to insinuate charges harmful to a defendant in the absence of a good faith belief on the part of the prosecutor that the questions should be answered in the affirmative, or that the facts which constitute the background of the questions could be proved if their existence should be denied [citations], legitimate cross-examination is a favored method of attempting to secure what the cross-examiner believes to be the truth. . . ."

The defense had put Jones on the witness stand and had

---

[1] "Q. Now, the truth is, sir, that you went to the store with these three persons, Mr. Wilson, Mr. Nairn, and Mr. Washington, on April 12th, 1966, in order to size up the place for a burglary the following morning; is that right?

"A. No, sir.

"Q. And the truth also is, isn't it, that when you went back the following day, you went back to keep your stories straight so that everybody would believe you went to that store to buy a television set and not for the purpose of a burglary; is that right?

"A. No, sir, it is not.

"Q. And on the day that you went there on April 12th you, or one of the persons with you, pursuant to a plan that you had made before that time, cut the—or broke the burglary alarm; is that correct?

"A. No, sir.

"MR. WALTON: Wait a minute. Excuse me, your Honor, this is highly improper, unless the District Attorney—— I would like to approach the bench on this matter?

"THE COURT: Yes."

inquired with reference to his purpose for being in the store on April 12, 1966. The prosecutor was not bound to accept Jones' version or explanation but could have and should have probed the witness' intentions. The prosecutor knew that Jones had no business with the store previously, he knew that Jones had lied to Officer Eide about the events of April 12, he knew that Jones was accompanied by three of the four men (including appellant) who were seen at and charged with the burglary, he also knew that the burglar alarm system became inoperative on the day before the burglary. It would appear that it was proper under the circumstances to ask the questions now complained of by appellant.

However, even if the questions were held to be improper appellant did not protect his record. As is said in *People* v. *Ney*, 238 Cal.App.2d 785, 790-791 [48 Cal.Rptr. 265] : " [I]t is the general rule that error predicated on the alleged misconduct of the prosecutor cannot be raised on appeal in the absence of (a) an assignment of such misconduct as error and (b) a request to the trial court to instruct the jury to disregard it. [Citations.] *A mere objection to the allegedly prejudicial statements without a request to the court to instruct the jury to disregard them is ordinarily insufficient to raise the question of misconduct on appeal.* [Citations.]" (Italics added.) The judge indicated that the objection would be sustained "to any further questions along this line." No request was made for any admonition to the jury. This case was not closely balanced in any sense, there can be no doubt of appellant's guilt and as a consequence he does not come within the exception to the usual rule. Appellant argues that he was under no duty to ask the judge to admonish the jury because to admonish would have underscored the imputed facts. A jury is presumed to follow the court's instructions and there is nothing in this case which persuades us that the contrary would have been true here. (See *People* v. *Sutic,* 41 Cal.2d 483, 494 [261 P.2d 241].

Even assuming that the questions were improper it is evident that under the circumstances of this case the questions had no material effect either way and no miscarriage of justice resulted under any reconciled standard. (See *Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824] ; *People* v. *Watson,* 46 Cal.2d 818, 835 [299 P.2d 243].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied August 2, 1968.