[Crim. No. 7460. Third Dist. Feb. 7, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
ROSALIO HISQUIERDO, Defendant and Appellant.

**COUNSEL**

Richard Keith Corbin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Roger E. Venturi and Janice Hayes, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**REGAN, Acting P. J.**—Defendant was convicted by jury of assault with a deadly weapon while serving a life sentence in a state prison (a violation of Pen. Code, § 4500), and of possessing a dirk or dagger while a prisoner in a state prison (a violation of Pen. Code, § 4502).

Defendant was serving a life term in Folsom Prison. David Hamilton was another prisoner at Folsom. On November 13, 1972, Correction Officers William Sandoval and Chester Moore both observed a fight or scuffle in progress between defendant and Hamilton. From a distance of about 30 feet Officer Sandoval saw defendant strike Hamilton several times with a weapon consisting of a pushrod from a toilet or sink. Officer Moore also saw the weapon in defendant's hand. Hamilton suffered puncture wounds of the arm, chest and back.

The defense consisted principally of testimony by defendant and David Hamilton. Their version of how Hamilton was wounded was substantially that an unidentified Mexican-American inmate had stabbed Hamilton and had fled just before defendant arrived at the scene; that Hamilton had thought defendant was part of a gang out to get

him and consequently Hamilton started fighting with defendant; that defendant saw the pushrod weapon on the floor and he picked it up, used it to push Hamilton away from him but did not stab Hamilton with it.

At arraignment on May 2, 1973, defendant told the court he had no lawyer and no funds but did not want the public defender to represent him. The court made tentative appointment of the public defender and continued arraignment to May 9, 1973. On May 9, 1973, defendant was represented by the public defender at arraignment but made a speaking motion himself to have a specific private attorney whom he named (Anthony Scalora) represent him rather than the public defender. The court informed defendant that it had authority only to appoint the public defender under the circumstances. Subsequently on various dates before trial both the public defender and defendant acting on his own behalf filed various motions, including motions to dismiss, motions for continuance, and motions to disqualify certain trial judges. On July 20, 1973, defendant, in addition to other pretrial matters, raised again in propria persona the matter of dismissal of the public defender and appointment of private counsel to defend him. Defendant stated he had no funds to hire private counsel; that he desired to have counsel, but not the public defender. He attempted to file on that date and have the court read a formal written motion stating, inter alia, that he had no faith in the public defender, that he was not competent and that he wanted to prove this at an evidentiary hearing. The court refused to read the written motion and declaration, pointing out that absence of funds required that under the circumstances the public defender handle the case. The declaration of defendant was filed thereafter on November 26, 1973, and stated as grounds for dismissal that the public defender did not visit and consult with defendant "sufficiently" and that there was a "conflict of interest and tactics" between defendant and the public defender.

■ On appeal, defendant contends it was reversible error for the court on July 20, 1973, to refuse to read his motion and declaration of reasons for dismissing the public defender. He relies principally on the case of *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], which held it reversible error for a trial judge to refuse to hear an explanation of reasons or grounds for dismissal and substitution of his appointed counsel. In *Marsden,* the defendant sought replacement of his counsel after the People had completed presentation of their case at trial and asked to be allowed to bring up specific instances from the trial which would show his counsel had not properly represented him. The

court refused to listen on the grounds that the court did not want defendant to say anything that might prejudice him in the eyes of the judge. (See 2 Cal.3d at pp. 121-122.) It was a jury trial. The Supreme Court pointed out that a defendant has an absolute right to appointed counsel, but that the right to discharge him and substitute another is qualified, subject to the discretion of the trial court; and the trial court cannot properly exercise this discretion without listening to defendant's specific allegations of misconduct or inadequate representation. (*Id.* at pp. 123-124.) However, in the instant case, any abuse of discretion there might have been was clearly cured when, on July 21, 1973, defendant was allowed to state his reasons for wishing to dismiss his appointed counsel. Defendant stated his grounds were "conflict of interest and tactics" between defendant and his appointed counsel. The matter was submitted and the court denied the motion to relieve the public defender and substitute a private appointed attorney. While it is true that in one declaration of defendant, mention was made of not enough "consultation," the same document also emphasized "tactics," and the court therefore saw the crux of the problem in its proper light, i.e., a matter principally of dispute over tactics and strategy. It was tacitly recognized in *Marsden, supra,* that such reasons as given by defendant herein are not sufficient grounds upon which to base an appellate holding of abuse of discretion. (*Ibid.; People* v. *Floyd* (1970) 1 Cal.3d 694, 704 [83 Cal.Rptr. 608, 464 P.2d 64].)

■ Defendant contends that lack of diligence in pretrial preparation and post-trial effort by the public defender resulted in denial of adequate representation. Defendant argues that the record in this case is "replete with evidence of lack of diligence in preparation of [his] defense at pretrial, trial and post-trial levels." Defendant particularizes his contention of inadequate preparation by pointing to (a) failure of the defender to interview witnesses named by defendant over a period of several months; (b) failure to obtain pretrial discovery as to prison files until the middle of the trial; (c) failure to move for a new trial until defendant had himself so moved in propria persona and then only to file a short motion with no grounds cited or points and authorities.

Our review of the record shows little support for defendant's arguments. Defendant himself hampered the preparation of the defense case, not only by attempting more than once to remove his counsel but also by instructing prospective defense witnesses not to discuss the case with the public defender or his investigator. (See *People* v. *Beagle* (1972) 6 Cal.3d 441, 459 [99 Cal.Rptr. 313, 492 P.2d 1].) It is true that a short continuance

from one afternoon until the next morning was necessary for defense cross-examination of a witness based on prison files which had been subpoenaed during the trial. It is true that the trial court chastised the public defender for his part in causing the short continuance. However, there was nothing to indicate any impropriety or any inadequacy of representation of such a nature as would reduce the trial to a farce or sham or deny defendant any defense. (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Pena* (1972) 25 Cal.App.3d 414, 424 [101 Cal.Rptr. 804].) As to the motion for new trial, defendant himself did indeed file his own motion, with supporting written declaration and points and authorities, on January 25, 1974. However, it is not true, as claimed by defendant, that the public defender failed him in this regard. The public defender also filed a written motion for new trial on February 1, 1974. It was not as elaborate as defendant's propria persona motion, but it was also ably argued orally to the court on February 14, 1974, and the motion was denied. We see no indication of inadequacy of counsel such as to warrant reversal on any of the grounds raised by defendant, or from our reading of the record in general.

■ Defendant contends the prosecutor indulged in several bad faith attempts to prejudice him in the minds of the jury. The incidents complained of are two questions put to defendant on the witness stand by the prosecutor, a question put to a defense witness, and an alleged imputation that defendant had manufactured or fabricated a defense.

The prosecutor asked defendant if he knew how to use a knife. Defendant responded "no." The prosecutor then asked if defendant had ever used a knife in the past. Defense counsel objected to this question, it was sustained, and the question was therefore unanswered. On appeal defendant argues that these questions were prejudicial misconduct of the prosecutor calling for reversal. They were not. Defendant argues that this was a bad faith attempt of the prosecutor to prove other offenses and a criminal propensity of the defendant. If it was such a bad faith attempt, which we do not hold it to be, the attempt was thwarted by alert defense counsel and proper ruling by the trial court.

■ Gilbert Salazar was a defense witness who was also an inmate at Folsom Prison. On cross-examination of Salazar, the prosecutor asked him if he was in the "same association" with defendant. Defense counsel objected and on offer of proof it was disclosed that the line of questioning was intended to develop that both defendant and Salazar were members of the "Mexican Mafia," a known association of Mexican

heritage prisoners within the California penal system. The prosecutor explained that he wished to develop this to show possible bias and prejudice of Salazar in favor of defendant. Defense counsel prevailed, and when the jurors returned the court admonished them to "disregard the last question and answer concerning the existence of an organization known as the Mexican Mafia." The Attorney General concedes on appeal that it was improper for the trial judge to refer to the Mexican Mafia when the question had only referred to an "association." However, as pointed out by the Attorney General (as well as by defendant in other contexts), the jury was presumably well aware, or could have been well aware, of the existence of the "Mexican Mafia" from protracted and very recent newspaper accounts in the area of problems in the prisons, including Folsom, arising in connection with inmates belonging to such an organization. Thus, while the trial court may have been intemperate in use of language in admonishing the jury, we are unable to say that either the asking of the question by the prosecutor or the manner of admonition by the trial court caused any miscarriage of justice, because we find it not to be reasonably probable in the light of the record that a different result would have obtained in the case absent the alleged prejudicial incident. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

■ In his closing argument the prosecutor referred to the testimony of inmates who had testified favorably to defendant. He suggested to the jury that their stories were "fabricated and phony." He also suggested fraud amongst the defense witnesses and that defendant himself had committed perjury. At the end of the argument, defense counsel raised an objection to the entire argument, but he did not object at the places at which the prosecutor made the comments or suggestions referred to above and which he now categorizes as reversible prosecutorial misconduct. Neither did he request a jury admonition at any time to disregard such prosecutorial remarks. Having failed to do either, he is foreclosed from now raising this particular misconduct issue on appeal, since this is not a closely balanced case where there is great doubt as to defendant's guilt. (*People* v. *Chojnacky* (1973) 8 Cal.3d 759, 765 [106 Cal.Rptr. 106, 505 P.2d 530]; *People* v. *Washington* (1968) 263 Cal.App.2d 814, 817 [70 Cal.Rptr. 80].) However, we have chosen to look into the merit of defendant's argument that the prosecutor's assertion of "fabrication" of the defense theory of the case was reversible prosecutorial misconduct under the holding of the Supreme Court in the case of *People* v. *Bain* (1971) 5 Cal.3d 839, 847 [97 Cal.Rptr. 684, 489 P.2d 564]. The *Bain* case held it to be misconduct for a prosecutor to make an "unsupported

implication" that defense counsel fabricated a defense. *(Ibid.)* That case is distinguishable from the instant case for several reasons. First, the prosecutor in the case at bench did not hint, imply or state that defense counsel had taken part in any fabrication, but only that the defense witnesses had reasons for fabricating their version of what happened. Second, the *Bain* case did not hold implications or assertions by the prosecutor of fabrications or phony stories by defense witnesses to constitute *prejudicial* misconduct in *all* cases. The *Bain* case held it to be prejudicial misconduct "in the circumstances" of that particular case. Those circumstances were entirely different from the case at bench. In *Bain,* defendant had been prosecuted for forcible rape, inter alia, and the only witnesses were the victim and the defendant. There was sharp conflict between their testimony. It was a close case. The court pointed out that in those circumstances there was grave danger of any misconduct of the prosecutor tipping the scales and thus there was a reasonable probability that absent the prosecutor's misconduct, objected to by the defense, the jury might have reached a different result. (See 5 Cal.3d at p. 849.) The case at bench is not such a case. It is not a close case, if the jury chose, as it obviously did, to believe the prosecution witnesses. (Cf., *People* v. *Reyes* (1974) 12 Cal.3d 486, 505 [116 Cal.Rptr. 217, 526 P.2d 225].) Accordingly, in this case, unlike the *Bain* case, we find it not to be reasonably probable that absent the prosecutor's imputation of fabricated evidence a different result would have occurred. There was accordingly no miscarriage of justice. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

██ Defendant contends it was reversible error for the trial court to deny his motion to continue the trial long enough to "allow the furor to die down" which he. attributed to articles in newspapers written shortly before the trial date concerning various acts of violence in several prisons, including Folsom, attributed to members of the Mexican Mafia and Nuestra Familia. The motion was made on the first day of trial, December 3, 1973, before the jury selection commenced. The newspaper articles to which defendant had reference were articles which had appeared in November, and some of which continued into December 1973. They appeared in local and bay area newspapers and described prison violence which was attributed primarily to friction between two Chicano prison groups or gangs, known as the Mexican Mafia and Nuestra Familia. Descriptions of various knives and other weapons found in the prisons were included in the articles, and it was claimed over 100 stabbings had occurred from the gang wars between these groups. Also involved, according to the articles, were groups of black

prisoners variously called Black Liberation Army and Black Guerilla Family. Efforts of the Department of Corrections to remedy the serious situations were described in the articles. Except for the attack on the well-known convicted mass murderer, Juan Corona, as to which there was an article in the Sacramento Bee on December 3, 1973, none of the articles emphasized any particular individuals who had been stabbed or had committed any stabbing. Defendant made no reference in his motion for continuance (nor in his later motion for mistrial) to any newspaper articles referring to his particular case. They were all general in nature, concerned with the state-wide problems existing in the prisons. His argument to the trial court, and his contention in this court on appeal, was and is in substance that it was impossible or at least highly improbable that his client could have a fair, impartial trial by the jury because of the newspaper articles referred to.

We disagree with defendant's contention and arguments pertaining to pretrial publicity. This is not a case such as the case of *Sheppard* v. *Maxwell* (1966) 384 U.S. 333 [16 L.Ed.2d 600, 86 S.Ct. 1507] cited by defendant. In that case, it was held that saturation publicity *about the defendant and the case,* before and during trial was so prejudicial as to make a fair jury trial impossible. In the case at bench, the record discloses no such massive and pervasive publicity about defendant or his trial. When the motion for continuance was made, it was the duty of the trial court to exercise its sound discretion in ruling on the motion within the guideline of Penal Code section 1050 which provides that no continuance shall be granted except upon affirmative proof in open court that the ends of justice require a continuance. However, the courts have never held, nor do we hold, that the type of stories in the media with which we are here concerned would alone be evidence that defendant could not have received a fair and impartial jury trial. ■ We must apply the rule on appeal with respect to continuance motions, which is that the determination of whether a defendant has affirmatively demonstrated that justice requires a continuance is a factual matter and will not be disturbed on appeal in the absence of a clear abuse of discretion by the trial court. (*People* v. *Bethea* (1971) 18 Cal.App.3d 930, 937 [96 Cal.Rptr. 229].) ■ We find no abuse of discretion here.[1]

---

[1]It is noted that the court asked the jury panel if any of them had read or heard anything about the offense allegedly committed by defendant in this case and none responded affirmatively. Also the court inquired about the more general publicity referred to hereinabove, the Juan Corona story, or prison "lock-up" stories. The entire panel indicated they were aware of some or all of the stories, but, when the court asked if the Corona story would influence them none answered affirmatively. The court admonished them that any such stories had nothing to do with this case. The three jurors who were excused for cause by the defense or the court were excused for other reasons than that with which we are here concerned.

■ Defendant contends there is no substantial evidence in the record to support the verdicts of guilty of violation of Penal Code section 4500 or section 4502. This argument is sufficiently without merit to be specious. Without referring to other evidence in the record supportive of the verdicts, it suffices to point out that Correctional Officer Sandoval saw defendant "strike" Hamilton five or six times using an upward thrust with the pushrod. Correctional Officer Moore saw defendant "stabbing at" Hamilton six to eight times with the rod. The evidence was clearly sufficient to support the verdicts and judgment under the test we must apply on appeal. (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

■ Defendant contends the failure to instruct on provocation was error. It was not. There was no request for such an instruction. Likewise, there was no duty upon the trial court to give such an instruction, *sua sponte.* Provocation was not relied upon as a defense because defendant denied the stabbing, and it was not a principle of law closely and openly connected with the facts before the court. Therefore, under the established rules for testing the need of a *sua sponte* instruction, the court was under no duty to do so here. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715-716 [112 Cal.Rptr. 1, 518 P.2d 913]; cf., *People* v. *Chacon* (1968) 69 Cal.2d 765, 781 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454].)

■ Defendant contends, without supporting argument, reference to facts, or any authority, that he was denied due process of law in the manner in which the public defender challenged the grand and petit juries. Under such circumstances we could refuse to entertain the issue on appeal. (*People* v. *Ham* (1970) 7 Cal.App.3d 768, 783 [86 Cal.Rptr. 906]; *People* v. *Woods* (1968) 260 Cal.App.2d 728, 730-731 [67 Cal.Rptr. 396].) However, we have examined the record of defense counsel's examination on the witness stand of certain superior court judges and court personnel who had a part in the grand jury selection process. The examination was thorough and competent, not improper or lacking in skill. We have also examined the record of defense counsel's examination of each prospective juror. Here again, the examination was thorough and competent, not improper or lacking in skill. There was no deprivation of due process of law.

The judgment is affirmed.

Paras, J., and Thompson, J.,* concurred.

A petition for a rehearing was denied February 28, 1975, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1975. Richardson, J., did not participate therein.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.