[No. B063631. Second Dist., Div. Seven. May 6, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNEST JOHN SAVEDRA, Defendant and Appellant.

**COUNSEL**

Margaret E. Dunk, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, William T. Harter and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS (Fred) J.**—A jury convicted appellant of possessing a deadly weapon while lawfully confined in a jail. (Pen. Code,[1] § 4574, subd. (a).)[2] Appellant admitted three state prison prior felony convictions (§ 667.5, subd. (b)).

---

[1] Statutory references, unless otherwise noted, are to the Penal Code.

[2] In pertinent part the section provides: "Except when otherwise authorized . . . any person who, while lawfully confined in a jail or county road camp possesses therein any . . . deadly weapon . . . is guilty of a felony and punishable by imprisonment in the state prison for two, three, or four years."

Appellant contends three errors require reversal: instructional error, admitting a People's exhibit, and ineffective assistance of counsel. We find no prejudicial error and affirm the conviction but remand the matter for resentencing.

### FACTUAL BACKGROUND

There being no insufficiency of evidence claim, the facts may be stated simply. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

On May 9, 1991, appellant, 29 years old, was serving time at the Pitchess Honor Ranch, South Facility, in Saugus, California, a local jail facility. As an inmate who had served 3 separate state prison terms, he was confined to barracks #32, a structure approximately 20 feet wide and 100 feet long, accommodating 98 prisoners, and where only personal effects (a comb, toothbrush, and toothpaste) were permitted. No candy, cigarettes, or food were permitted. Before entering barracks #32 inmates were stripsearched and given a fresh set of clothing. A deputy sheriff guard was present in the barracks 24 hours a day.

At 2 p.m., approximately nine deputy sheriffs entered the barracks to conduct a contraband search, a routine and frequent procedure.

Upon entering, Deputy Sagardia loudly announced "Get on your bunks, face the front of the barracks. Don't move." He then saw appellant, about 10 to 15 feet away, sitting on his bunk "fiddling with his left pocket, pulling something out, toilet paper." Appellant pulled out a little bundle of toilet paper, looked at Sergeant Becker looking at him, and pushed it back in his pocket. Sergeant Becker then searched appellant. Deputy Sagardia saw Sergeant Becker remove "a nail with a toilet paper handle" from appellant's left pocket. About three inches of the nail was sticking out from the toilet paper. The nail was rusted, had not been sharpened or otherwise altered, and was approximately three to four inches long.

Inmates are informed such items are prohibited. Appellant was not authorized to have such an item.

In Deputy Sagardia's opinion the nail with its toilet paper handle was a "shank," a jail-made device used for stabbing or slashing. During his six months as a guard he had seen such instruments four or five times and had once seen an inmate stabbed in the stomach with one. The inmate sustained a puncture wound and was taken by ambulance to the hospital.

Deputy Maas, with three years' experience at this jail facility, had seen several dozen inmate-fashioned weapons. He had seen at least 10 people who had been stabbed by them. He had also seen other weapons like the instant one and usually they had "something wrapped around them such as kleenex or a cloth of some sort." The covering was for the purpose of concealment and, if necessary, disposal without detection. In his opinion there was only one reason to possess such an item: to use it as a weapon. He considered it a "deadly weapon."

## DISCUSSION

1. *Appellant contends the trial court erred in refusing to give CALJIC No. 12.42.*

To inform the jury of the subject offense and its elements the trial court instructed them as follows:

"Defendant is accused in the information of having violated section 4574(a) of the Penal Code, a crime.

"Every person who, while lawfully confined in a jail possesses therein a deadly weapon is guilty of the crime of violation of section 4574(a) of the Penal Code.

"In order to prove such a crime, each of the following elements must be proved:

"1) A person possessed a weapon

"2) The weapon was a deadly weapon

"3) Without authorization

"4) While lawfully committed to county jail.

"Possession requires that a person knowingly exercise direct control over a thing.

"A deadly weapon means any weapon, instrument or object that is likely to inflict great bodily injury or death.

"Intended violent use is not an element of the crime and need not be proven. Evidence of harmless use may be considered if it bears on the likelihood that an item will cause death or violent injury."

■ Appellant does not fault this instruction, as far as it goes, but implies it is incomplete. He argues "other factors," omitted from the court's instruction but included in CALJIC No. 12.42 are relevant to determine whether or not the subject item was a deadly weapon.

As proposed, CALJIC No. 12.42 read:

"In determining if the instrument or object in this case was a weapon of the kind within the law as stated, you may consider the circumstances attending any possession of the instrument or object by the defendant, such as the time and place of its possession; the destination of the possessor; any alteration of the object from its standard form; and evidence, if any, indicating its intended use by the possessor for a dangerous rather than a harmless purpose."

Appellant is mistaken. The proposed instruction stems from *People v. Grubb* (1965) 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100] which construed not section 4574, subdivision (a) but section 12020. The former section concerns persons *in custody* and prohibits them from possessing *any* "deadly weapon." The latter section concerns *any person* and prohibits the possession of specified weapons such as, in *Grubb*, a "billy."

In *Grubb* the defendant possessed a small baseball bat, 20 inches long, taped at the handle, the last few inches of which had been broken from the bat. To answer his contention that the statute was unconstitutionally vague (encompassing "such ordinary objects as an orthodox baseball bat, a table leg, or a piece of lumber; even though these objects find their most common use in a peaceful and traditionally acceptable way, all of them could be used as weapons of physical violence" (63 Cal.2d at pp. 619-620), the Supreme Court stated: "The Legislature here sought to outlaw the classic instruments of violence and their homemade equivalents; the Legislature sought likewise to outlaw possession of the sometimes-useful object when the attendant circumstances, including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicated that the possessor would use the object for a dangerous, not harmless, purpose." (*Id.* at pp. 620-621.)

Of the five factors identified by *Grubb* and included in the proposed CALJIC No. 12.42 instruction, four are inapplicable to the instant offense. Section 4574, subdivision (a) prohibits the unauthorized possession of deadly weapons by confined inmates at all *times*, in all (confined) *places*, at all *destinations*, regardless of *alteration*. As to the fifth factor, *intended use*, the trial court, in its instruction to the jury, covered the subject ("Evidence of

harmless use may be considered if it bears on the likelihood that an item will cause death or violent injury.")

The trial court did not err in refusing to give the proposed CALJIC No. 12.42 instruction.

2. *Appellant contends the trial court erred in responding to the jury's request for a definition of "likely."*

During deliberations the jury sent a note to the trial court, as follows: "We would like to know what the words '*likely* to cause great bodily harm' mean? [¶] Does the word 'likely' mean that it must be 1) merely possible? 2) more probable than not?"

The question was obviously prompted by the court's instructional definition: "A deadly weapon means any weapon, instrument or object that is likely to inflict great bodily injury or death."

The trial court conferred with counsel. Counsel for appellant urged a "more probable than not" answer. The trial court rejected that answer and instead instructed the jury that "likely," as used in the instruction "means: has the potential for use as a deadly weapon." ■ Appellant claims error. We disagree.

At the outset we acknowledge, as appellant urges, that in ordinary usage and in many legal contexts "likely" means "probable" or, as the jurors put it, "more probable than not." But the jury did not ask for an ordinary usage or dictionary definition. Their question was what does the word mean within the definition of "deadly weapon." *That,* as *People* v. *Rodriquez* (1975) 50 Cal.App.3d 389, 396 [123 Cal.Rptr. 185] makes clear, is a different matter.

*People* v. *Rodriquez* stated: "We turn to whether intended use is an element of proof of 'deadly weapon.' A 'deadly weapon' is one ' ". . . likely to produce death or great bodily injury." ' Certain items are inherently deadly weapons. Most objects, including a razor blade, may or may not be deadly, depending on the factual context. This is so because they also may be used for legitimate purposes. Whether such an item is a deadly weapon is a question of fact to be determined from surrounding circumstances.

"Section 4574 proscribes possession, not use, as noted above. Therefore, the statute is concerned with the *potential* of the item in question. Reading the statute as a whole, it is evident the Legislature enacted no halfway measure. Effective protection of inmates and officers from armed attack

depends upon prohibition of possession of *all* deadly weapons in jail. This valid legislative objective does not except weapons with dangerous *capabilities* which also have innocent uses. Speaking in regard to section 4502, *People v. Wells, supra,* 261 Cal.App.2d at pages 478-479 noted the statute '. . . serves an objective demanding relative inflexibility and relatively strict liability. . . . It is one of the "stringent statutes governing prison safety." ' The same may be said of section 4574. It is plain a razor blade's *potential* for use as a deadly weapon does not depend on an intended violent use." (50 Cal.App.3d at p. 396. Internal citations omitted. Italics added.)

As *Rodriquez* noted it is the "potential of the item" which determines its classification. Merely because slashing someone with a toothbrush-razor might "inflict great bodily injury or death" only 49 percent or 32 percent of the time does *not* mean such an item is outside the definition of "deadly weapon." *Because* it might inflict such injury or death 49 percent or 32 percent of the time it has a "potential," a "capability," for causing "great bodily injury or death" and thus is a "deadly weapon." (Cf. *People v. Velasquez* (1984) 158 Cal.App.3d 418 [204 Cal.Rptr. 640] [a sharpened piece of metal from a bunk railing with a cloth handle]; *People v. Talkington* (1983) 140 Cal.App.3d 557 [189 Cal.Rptr. 735] [a tightly rolled tube of paper, one end sealed with melted plastic, a hole in the tube near the closed end, and containing 30 matchheads is a "firearm" although the device had not been fired, had no projectiles, and might not work]; *People v. Carter* (1981) 117 Cal.App.3d 546 [172 Cal.Rptr. 838] [an unloaded .22-caliber pistol which might not fire]; *People v. Hisquierdo* (1975) 45 Cal.App.3d 397 [119 Cal.Rptr. 378] [a pushrod from a toilet or sink]; *People v. Harris* (1950) 98 Cal.App.2d 662 [220 P.2d 812] [a 6-inch, handleless metal wood chisel with a sharpened point]; *People v. Crenshaw* (1946) 74 Cal.App.2d 26 [167 P.2d 781] [6-inch beveled file].)

Appellant's contention is not well taken.

3. *Appellant contends the trial court erred in admitting an evidence envelope containing the nail and toilet paper.*

The trial court admitted into evidence People's exhibit No. 1, the subject nail and bundle of toilet paper, *and* the evidence envelope Deputy Sagardia had placed them in. On the envelope was written "3 inch nail with toilet paper handle."

■ Appellant contends it was prejudicial error for the jury to receive the envelope because its writing contained "[a]n unsupported characterization" by an anonymous declarant. The contention does not bear scrutiny.

Deputy Sagardia expressly testified the item was a three- to four-inch nail with a toilet paper handle. He was equally explicit in testifying *he* wrote those words on the evidence envelope. Finally, appellant stated he had "no objection" to the receipt of the exhibit into evidence. (Evid. Code, § 353; *People* v. *Rogers* (1978) 21 Cal.3d 542, 547-548 [146 Cal.Rptr. 732, 579 P.2d 1048].)

4. *Appellant contends the trial court erred in giving CALJIC No. 2.21.2.*

The trial court gave the following instruction: "A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars." (CALJIC No. 2.21.2.)

■ Appellant contends this instruction was "an impermissible, argumentative, prosecution 'pinpoint instruction,'" citing *People* v. *Wright* (1988) 45 Cal.3d 1126, 1135-1137 [248 Cal.Rptr. 600, 755 P.2d 1049]. The contention is frivolous.

*People* v. *Wright* condemned instructions which "invite the jury to draw inferences favorable to [a party] from *specified items of evidence* on a disputed question of fact." (45 Cal.3d at p. 1135.) (Italics added.) The subject instruction did not specify items of evidence, identify witnesses (cf. *People* v. *Wright, supra,* at p. 1135, fn. 5), or in any way favor the prosecution over the defense.

Because there were discrepancies, however minor, in the testimony of all three witnesses (Deputy Sagardia, Sergeant Becker, and appellant) the instruction was applicable. The instruction properly did no more than "contain a principle of law applicable to the case . . . ." (45 Cal.3d at p. 1135.)

5. *Appellant contends he was denied effective assistance of counsel.*

Appellate counsel for appellant contends appellant's trial counsel should have objected to CALJIC No. 2.21.2 (which instruction we have just discussed) and to the prosecutor's closing argument "presenting a scenario about the nail being considered by inmates a[s] a weapon." We have examined the prosecutor's brief argument and find it unobjectionable.

The contention is without merit.

6. *Respondent contends the trial court committed sentencing error.*

As we have indicated, appellant admitted three "prior separate prison" felonies. (§ 667.5, subd. (b).) Section 667.5, subdivision (b) provides: ". . .

where the new offense is any felony for which a prison sentence is imposed, *in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for each prior separate prison term served for any felony*; . . ." (Italics added.)

■ The trial court, contrary to section 667.5, subdivision (b), imposed a *concurrent* one year sentence for each prior.[3] To do so was error.

We have examined the trial court's sentencing comments for implied "circumstances in mitigation" (§ 1170.1, subd. (h)) justifying the striking of one or more of the priors, and find none. We do not suggest the nonexistence of such circumstances, only the failure of the present sentencing record to reflect any. (Cf. *People* v. *Jordan* (1986) 42 Cal.3d 308, 314-316 [228 Cal.Rptr. 197, 721 P.2d 79].)

Since we must vacate the sentence and remand the matter to the trial court for resentencing, we add these observations.

Immediately before trial, the trial court told appellant that if he pleaded guilty and admitted the three priors he would be granted probation and given only 10 months in custody. The trial court assured appellant "[h]e won't be penalized if he goes to trial." The trial court cautioned appellant that "if I read the probation report and the matter appears more serious to me or if the testimony develops and it appears that there are any factors that I would consider aggravating and/or the defendant testifies and I believe that he's not being truthful, then he can expect to do considerably more." Appellant declined the court's sentence offer.

After trial, the trial court sentenced appellant to "considerably more" but failed to explain why. Although, normally, imposing "the middle statutory term" does not require the statement of a reason (Cal. Rules of Court, rule 406(b)), here such a statement would be useful.

## Disposition

The judgment of conviction is affirmed. The sentence is vacated and the matter remanded to the trial court for resentencing in accordance with this

---

[3]The abstract of judgment, prepared by the deputy clerk not the trial court, indicates the disposition of each prior with an "S," which according to the printed form may mean either "stayed" or "stricken." But the printed form also states: "Do Not List enhancements . . . stricken under § 1385." From the trial court's comments and the form, the "S" denotes "stayed," the functional equivalent of the prohibited "concurrent" sentence.

opinion. (See also *People* v. *Alexander* (1992) 8 Cal.App.4th 602 [10 Cal.Rptr.2d 450].)

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied May 26, 1993, and appellant's petition for review by the Supreme Court was denied August 11, 1993.