Filed 3/26/15  P. v. Mims CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE, | C075966 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF130947) |
| v. | |
| DESHAWN LEE MIMS, | |
| Defendant and Appellant. | |

The primary argument raised by defendant DeShawn Lee Mims is that there was insufficient evidence to support his conviction for inflicting corporal injury on a cohabitant.  Specifically, he argues that his two-week relationship with the victim was "too new and of too short a duration" to support a finding of cohabitation under Penal Code section 273.5.[1]  The Legislature, however, has not imposed a durational requirement on the cohabitation element of 273.5.  And, taken as a whole, the record in this case contains substantial evidence to support the conclusion that defendant and the

_____

[1]  Undesignated statutory references are to the Penal Code.

1

victim were cohabitating. We reject defendant's challenge to the sufficiency of the evidence.

Defendant also contends the trial court erred in imposing a concurrent one-year term on one of his prior prison term enhancements. We agree that the trial court erred in imposing a concurrent term on defendant's prior prison term enhancement, and will remand the matter to the trial court for resentencing. In all other respects, we will affirm.

## BACKGROUND

On May 3, 2013, the Sutter County District Attorney filed a four-count information alleging that defendant committed the following offenses: (1) attempting to prevent or dissuade a victim, with an expressed or implied threat of force of violence, from making any report to a peace officer (§ 136.1, subd. (c)(1); count 1); (2) corporal injury to a cohabitant (§ 273.5, former subd. (a); count 2); (3) false imprisonment (§§ 236/237; count 3); and (4) misdemeanor unlawful entry into a residence (§ 602.5, subd. (b); count 4). The information also alleged that defendant had prior felony and prior serious felony convictions (§§ 667.5, subds. (a)-(b), (e)-(1); 1170.7, subd. (c)), and had served two prior prison terms. (§ 667.5, subd. (b).) The trial court dismissed count 4 before trial.

A jury trial began on June 25, 2013. During the trial, the victim, Samantha M., testified that she met defendant approximately two weeks before the events leading to the charges against him. They immediately commenced a dating relationship, which included sexual relations. According to Samantha, defendant lived in the Yuba City home she shared with her mother and brother, "[t]he whole entire time we were dating."

During their time together, Samantha helped defendant research colleges and the military on the computer. They requested information from various websites and gave Samantha's home address in response to online queries. According to Samantha, "I'm not like his–I don't know, like if it was his permanent address, but if you–[defendant] was signing up for colleges or other stuff I would help him on the computer with that, so

2

that all his college stuff, military, anything he signed up for is sent to my address." They did not file a formal change of address form with the Department of Motor Vehicles (DMV). Nevertheless, Samantha testified that defendant received mail at her home.

Although Samantha testified that defendant lived with her, she acknowledged that he did not have a key to her house. Furthermore, Samantha testified that defendant was only allowed inside the house when she was there, and then only with her permission.

On April 13, 2013, Samantha and defendant visited defendant's father and stepmother in Linda. Later that day, they went to a family barbeque at the home of defendant's aunt in Yuba City. Within moments of their arrival, another guest, whose son Samantha had previously dated, verbally accosted Samantha and spat in her face. Upset, Samantha left the barbeque and started to walk home. Defendant followed her.

Defendant followed Samantha back to her house, despite her repeated requests that he leave her alone. At one point, defendant approached Samantha from behind and put his arm around her neck. He then grabbed her around the middle and lifted her off the ground, making it difficult for her to breathe. Defendant held Samantha in this position for approximately three minutes, ignoring her pleas to let her go. Later, Samantha tried to run from defendant and hide, but defendant was able to find her.

When they finally reached Samantha's street, she broke away and ran for the front door. Defendant chased her. The door was locked, so Samantha rang the doorbell. Samantha's 17-year old brother, Cody, answered. Samantha told Cody not to let defendant into the house, then closed and locked the metal security gate so he could not get in.

Defendant told Samantha he would leave if she would give him his things. Samantha went upstairs and packed defendant's belongings into a large black backpack. When she was done, after approximately "three to five minutes," she went back downstairs and unlocked the security gate to hand the backpack to defendant. Defendant grabbed the backpack from Samantha, pulled open the security gate, and pushed his way

3

into the house. He then slammed Samantha against the wall, causing her to fall to the ground. As he did so, he said, "[you] got to be [fucked] up if [you] think [I'm] not coming inside."[2]

Samantha got up and tried to use the house phone to call 911. Defendant grabbed the phone from Samantha's hands and ripped the cords from the wall. He pushed her against a computer desk and threatened to kill her if she called the police. He then pushed her into a recliner, knocking her to the ground. He then tried to hit her in the head with a thick glass cup, but Samantha managed to deflect the blow. Finally, Cody intervened and Samantha fled to a neighbor's house to call the police. When police arrived, Samantha told the responding officer that defendant, "stays occasionally, but he doesn't live [here]."

During the trial, Cody testified that defendant stayed with them off and on for about two weeks. Cody characterized the relationship between defendant and Samantha as boyfriend and girlfriend. He did not know whether defendant had ever received mail at the house.

A neighbor testified that he saw and heard parts of the altercation between Samantha and defendant. The neighbor also testified that he had previously seen defendant coming out of the house and taking out the garbage.

On June 27, 2013, the jury found defendant guilty of count 1 (dissuading a victim) and count 2 (inflicting corporal injury on a cohabitant). The jury also found defendant guilty of count 3 (false imprisonment), but found that the false imprisonment was not effected by violence. Defendant waived a jury trial on the prior enhancement allegations, which the trial court found to be true.

---

[2] Samantha testified that defendant said, "[you] got to be F'd up if [you] think [I'm] not coming inside." She later clarified that defendant said, "fucked" not "F'd."

4

On January 29, 2014, the trial court sentenced defendant to a total of nine years in state prison for count 1, consisting of the lower term of two years, doubled to four years pursuant to section 667, subdivision (e)(1), plus an additional five years for the prior serious felony conviction pursuant to sections 667, subdivision (a) and 1192.7, subdivision (c). The trial court reduced count 2 to a misdemeanor and sentenced defendant to 180 days. The trial court sentenced defendant to 220 days for count 3, to be served concurrently.

Turning to defendant's prior prison term enhancements, the trial court stated, "With regard to the other enhancements . . . under 667.5(b) of one year, I'm not imposing that. [¶] With regard to the enhancement under 667.5(b) the additional one-year term is imposed, but that will run concurrent to the other terms imposed leaving the total aggregate sentence at nine years."

Defendant filed a timely notice of appeal.

## DISCUSSION

### I

### *Sufficiency of the Evidence*

Defendant contends there was insufficient evidence of cohabitation to support his conviction under section 273.5, former subdivision (a).[3] We disagree.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence–that is, evidence that is reasonable, credible, and of solid value–from which a reasonable trier of fact could find the defendant

---

[3] Section 273.5, former subdivision (a) provided, in relevant part, "Any person who willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition is guilty of a felony . . . ." (Stats. 2012, ch. 867, § 16.)

guilty beyond a reasonable doubt. [Citation.] . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor revaluates a witness's credibility. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

"Cohabitation" within the meaning of section 273.5 has been defined by case law to describe unrelated adults "living together in a substantial relationship–one manifested, minimally, by permanence and sexual or amorous intimacy." (*People v. Holifield* (1988) 205 Cal.App.3d 993, 1000 (*Holifield*).) Cohabitation does not require proof of "a full quasi-marital relationship." (*Id.* at p. 1002.) However, it requires "something more than a platonic, rooming-house arrangement." (*Id.* at p. 999.) Factors that determine cohabitation include, without limitation, sexual relations between the parties, sharing of income or expenses, joint use or ownership of the property, the parties' holding themselves out as marital partners, the continuity of the relationship, and the length of the relationship. (*Id.* at p. 1001.)

Defendant contends his relationship with Samantha was too short to be considered "substantial" or "permanent," noting that the cases finding "cohabitation" involve greater periods of commitment than that reflected here. (See, e.g., *People v. Taylor* (2004) 118 Cal.App.4th 11, 19 [cohabitation where couple dated for five months and lived together on and off in a car]; *People v. Belton* (2008) 168 Cal.App.4th 432, 435-436, 438 [cohabitation where couple lived together in various locations, including the victim's rented room, motels, other people's homes, and a car, for some unspecified portion of the two-month relationship]; *Holifield, supra*, 205 Cal.App.3d at pp. 995-996, 1002 [cohabitation where defendant stayed in victim's motel room "half or more of the three months preceding the assault"].)

6

Although defendant's two-week relationship with Samantha was short-lived, section 273.5 does not require a minimum period of cohabitation. The Legislature has specified no such period, and we find no indication that one was intended. None of the pertinent cases impose such a requirement, and defendant cites no authority suggesting that one should be judicially created. Accordingly, we reject defendant's contention that the relationship was too short to be considered "substantial" or "permanent." Instead, we view the length of cohabitation as one of several factors to be considered in determining whether two people share a substantial relationship. (*Holifield, supra*, 205 Cal.App.3d at p. 1001.)

Defendant acknowledges that he had a sexual relationship with Samantha, but argues the prosecution failed to present any other evidence demonstrating the existence of a substantial relationship. We disagree. The record establishes that defendant and Samantha shared a sexually intimate–i.e., substantial–relationship and lived together for two weeks. During their time together, they discussed various plans for the future (such as college, and the military) and met one another's families. Although their relationship was still relatively new, defendant kept a large backpack containing his belongings at Samantha's house, contributed to household chores (by taking out the garbage) and received mail there. They were viewed by others as boyfriend and girlfriend. On this record, the jury could reasonably conclude that defendant and Samantha shared a substantial relationship of permanence and amorous intimacy, despite its limited duration.

Defendant argues, without citation to the record, that he "had his own home." We disregard all references to purported facts that are outside of the appellate record. (See Cal. Rules of Court, rule 8.204(e)(2)(C).)[4] In any event, the fact that defendant may

---

[4] We note that the probation report indicates that defendant "Lives with: The victim and her mother." Because the contents of the probation report were not presented to the jury,

7

have maintained a separate residence does not preclude a finding that he was cohabitating with Samantha. (*People v. Moore* (1996) 44 Cal.App.4th 1323, 1334.)

Defendant emphasizes that he did not have keys to Samantha's house, was only allowed inside with her permission, and only kept a few of his belongings there. None of these indicia of residence is required or dispositive. (*Holifield, supra*, 205 Cal.App.3d at pp. 996, 1002 [substantial evidence supported finding of cohabitation, despite the fact that the defendant did not have a key to defendant's motel room and took his clothes and other belongings each time he left].) Furthermore, though Samantha testified that defendant was not allowed inside the house without her permission, the record suggests that defendant believed he was entitled to enter over her objections.

Defendant also claims that Samantha was the one who provided her mailing address on online forms for colleges and the military, not defendant. He emphasizes that he never filed a change of address form with the DMV, and notes that Cody could not recall whether defendant ever received mail at Samantha's house. Defendant also emphasizes that Samantha told police that he "stays occasionally, but he doesn't live [here]." Though the jury could have relied on such evidence to find no cohabitation, it did not. Instead, the jury disregarded such evidence (as it was free to do) and credited, instead, the contrary evidence pointing to the existence of a substantial relationship between defendant and Samantha. As discussed, that evidence was sufficient to support defendant's conviction under section 273.5.

we do not consider them in evaluating the sufficiency of the evidence that was presented. (*People v. Banuelos* (2005) 130 Cal.App.4th 601, 607.)

8

II

*Unauthorized Concurrent Sentence*

The trial court sentenced defendant to a concurrent one-year term as an enhancement for one of defendant's two prior prison terms. The parties agree, and we concur, that the trial court erred in imposing a concurrent term.

Under section 667.5, subdivision (b), the trial court is required to impose a *consecutive* one-year term for each prior prison term served for any felony. (*People v. Savedra* (1993) 15 Cal.App.4th 738, 746-747.) Once a prior prison term allegation is found true, the trial court must either impose a consecutive one-year enhancement term pursuant to section 667.5, subdivision (b) or exercise its discretion to strike the allegation pursuant to section 1385. (*People v. Langston* (2004) 33 Cal.4th 1237, 1241; *People v. Campbell* (1999) 76 Cal.App.4th 305, 311; *People v. Jones* (1992) 8 Cal.App.4th 756, 758.) If the trial court exercises its discretion to strike the allegation, it must provide a statement of reasons for doing so. (§ 1385, subd. (a); *People v. Jordan* (2003) 108 Cal.App.4th 349, 368.)

Applying these authorities, we conclude the trial court erred in imposing a concurrent term for one of defendant's two prior prison term enhancements. Additionally, we note that the trial court failed to provide the required statement of reasons for striking defendant's other prior prison term enhancement.

We next consider the appropriate remedy. Defendant argues that the trial court "meant to impose and stay the prior," and urges us to amend the abstract of judgment to indicate that the one-year enhancement has been stayed. However, the trial court did not have authority to stay the sentence on the prior prison term enhancement, assuming it intended to do so. (*People v. Langston, supra*, 33 Cal.4th at p. 1241 ["Once the prior prison term is found true within the meaning of section 667.5(b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken"].) As discussed, the trial court was required to either impose and execute the one-year sentence, or strike the

9

enhancement. (*People v. Fielder* (2007) 154 Cal.App.4th 712, 714, fn. 3; see also *People v. Campbell, supra*, 76 Cal.App.4th at p. 311.) We therefore decline defendant's invitation to amend the abstract of judgment.

The People argue that the matter should be remanded for resentencing. We agree. On remand, the trial court shall either strike the enhancement allegation pursuant to section 1385, subdivision (a), with stated reasons for doing so, or impose the enhancement terms consecutively as required by section 667, subdivision (b). Given that we are remanding to address the appropriate resolution of this enhancement, we also direct the trial court to provide a statement of reasons for striking the previously stricken enhancement allegation.

## DISPOSITION

The judgment of conviction is affirmed. The concurrent sentence imposed for the prior prison term enhancement is reversed, and the case remanded with directions to impose a consecutive sentence on the prior prison term enhancement, or strike it, with a statement of reasons. The trial court is also directed to provide a statement of reasons for striking the previously stricken enhancement allegation. Finally, the trial court is directed to prepare an amended abstract of judgment reflecting the corrected sentence, and forward a certified copy to the Department of Corrections and Rehabilitation.


      RENNER      , J.

We concur:


   MAURO     , Acting P. J.


   HOCH     , J.